**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MARQUIS HAIRSTON,**

    **Petitioner,**                                **CASE NO. 2:09-978
JUDGE MARBLEY**

**v.**                                                        **MAGISTRATE JUDGE ABEL**

**WARDEN, Southern Ohio Correctional
Facility,**

    **Respondent.**

# Report and Recommendation

Petitioner Marquis Hairston, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the instant petition, Respondent's return of writ, Petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS and PROCEDURAL HISTORY

The Ohio Supreme Court summarized the facts and procedural history of this case as follows:

> In the fall of 2005, a series of home burglaries caused concern among inhabitants of German Village, a neighborhood located just south of downtown Columbus.
>
> At 7:00 a.m., on September 27, 2005, Marquis Hairston and two other males entered the home of Cynthia Green. She first saw them in the hallway adjacent to her bathroom as she prepared to take a shower. At gunpoint, they took her to the bedroom and forced her to remove her clothing and to kneel on her bedroom floor while they ransacked her home. One of the males, holding a gun to her head, began to tease her, saying "safety on, safety off" as the others loaded cash, jewelry, phones, stereo equipment, a laptop computer, and her clothing into her car. Then they gagged her by stuffing a pair of socks into her mouth, tied her to a chair, and left in her car. She eventually freed herself by using a pair of manicure scissors to cut her restraints and called the police.

Two weeks later, at 6:00 a.m. on October 10, 2005, Gary Michael Reames and his fiancée, Melanie Pinkerton, awoke to investigate why their dogs were barking and discovered two men in the hallway outside their bedroom-one holding a gun and the other holding a butcher knife. The men screamed obscenities and ordered Reames and Pinkerton to get down on their knees. While one of the men held them at gunpoint, the second man ransacked their home, taking cash, jewelry, and credit cards to Pinkerton's BMW. After loading the car, they ordered Reames and Pinkerton to take off their clothes, tied them to chairs in the hallway, and gagged them. After the men left in her car, Pinkerton freed herself, untied Reames, and called the police.

At about 6:45 in the morning on October 25, 2005, John Maransky, after showering and dressing for work, walked downstairs to his living room, where two men confronted him at gunpoint and ordered him to get down on the floor. One of the men held him at gunpoint while the other ransacked his home and took electronic equipment and other items outside to his car. The gunman threatened to shoot him if he tried to do anything. Once they finished loading his car, the men took Maransky to the basement, ordered him to strip, hogtied him, and stuffed a glove into his mouth. After they left, Maransky freed himself and called the police.

A week later, on November 2, 2005, Maransky discovered several of his stolen belongings at the E-Z Cash Pawnshop, located near the German Village neighborhood. He called the police, and officer Brenda Walker responded and spoke with the pawnshop clerk, who identified Hairston and his brother, Louis, as the individuals who had pawned Maransky's items. Thereafter, Pinkerton identified Marquis Hairston from a photo array as the perpetrator of the crimes. Based on this information, officers arrested Hairston on November 3, 2005, and, during a videotaped interrogation, he admitted his involvement in all three burglaries.

The state subsequently indicted him on 26 counts, including charges of robbery, aggravated robbery, burglary, aggravated burglary, kidnapping, theft, receiving stolen property, and having a weapon while under disability. Following Hairston's pleas of not guilty to all charges, the court began a jury trial on March 29, 2006. On the third day of trial, however, Hairston pleaded guilty to four counts of aggravated robbery, three counts of aggravated burglary, four counts of kidnapping, all with firearm specifications, and three counts of having a weapon while under disability. The state agreed to nolle the remaining counts.

At the sentencing hearing, the state requested maximum, consecutive sentences, asserting that Hairston had been imprisoned on two previous occasions for similar offenses and pointing out that he had burglarized Green's home just seven days after being released from prison. Each victim gave a statement to the court explaining the impact that the crimes had on their lives. Defense counsel urged the court to consider that Hairston was only 24 years old at the time of the offenses, that he had completed his GED while previously incarcerated, that he had not fired the gun, and that he claimed he had not caused the victims to suffer any serious physical harm.

The court referred to the purposes of sentencing - to protect the public and to punish the offender - and noted that Hairston had previously been incarcerated on two separate occasions for robbery and burglary, that there was no indication that he would have stopped committing these crimes had he not been caught, and that he had not expressed remorse for his behavior. The court also recognized the effect that Hairston's crimes had on the victims and on the community in general. Based on these considerations, the court imposed maximum, consecutive sentences for each of the 14 felony offenses and the gun specifications, resulting in an aggregate prison term of 134 years.

Hairston appealed to the Tenth District Court of Appeals, arguing, *inter alia*, that the aggregate sentence constitutes cruel and unusual punishment. The court of appeals rejected that argument and affirmed the trial court. *State v. Hairston,* Franklin App. No. 06AP-420, 2007-Ohio-143, 2007 WL 96971, ¶ 40-41. On Hairston's further appeal to this court, we agreed to consider the following proposition of law: "A violation of the Eighth Amendment to the United States Constitution occurs where a Defendant is sentenced to 134 years incarceration for three aggravated robberies where injuries are non-life threatening." 113 Ohio St.3d 1512, 2007-Ohio-2208, 866 N.E.2d 511.

Hairston argues that his sentence violates the Eighth Amendment because it is grossly disproportionate to the aggregate nature of his crimes and shocking to a reasonable person and to the community's sense of justice. He further maintains that his offense warrants less punishment than more serious offenses, such as rape, sexual abuse, or murder. The state contends that Hairston's aggregate sentence is not unconstitutional, because the term of incarceration for each offense is within the statutory range and because the court has discretion to impose those terms consecutively.

3

*State v. Hairston*, 118 Ohio St.3d 289, 290-292 (2008). On May 21, 2008, the Ohio Supreme Court dismissed Petitioner's appeal. *Id*. On August 6, 2008, the Ohio Supreme Court denied Petitioner's motion for reconsideration. *State v. Hairston*, 119 Ohio St.3d 1419 (2008).

On October 30, 2009, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He raises the following sole ground for relief:

> The State Courts violated Petitioner's Eighth Amendment clause against cruel and unusual punishment made applicable to the states by the fourteenth amendment by sentencing him to one hundred and thirty four years for three aggravated robberies where no physical harm occurred to the victims.

It is the position of the respondent that Petitioner's claim is without merit.

## MERITS

Petitioner asserts that his sentence violates the Eighth Amendment. The Ohio Supreme Court rejected petitioner's claim as follows:

> Hairston argues that his sentence violates the Eighth Amendment because it is grossly disproportionate to the aggregate nature of his crimes and shocking to a reasonable person and to the community's sense of justice. He further maintains that his offense warrants less punishment than more serious offenses, such as rape, sexual abuse, or murder. The state contends that Hairston's aggregate sentence is not unconstitutional, because the term of incarceration for each offense is within the statutory range and because the court has discretion to impose those terms consecutively.

Cruel and Unusual Punishment

The Eighth Amendment to the United States Constitution applies to the states pursuant to the Fourteenth Amendment. See *Robinson v. California* (1962), 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758. The amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Section 9, Article I of the Ohio Constitution sets forth the same restriction: "Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted."

In *State v. Weitbrecht* (1999), 86 Ohio St.3d 368, 715 N.E.2d 167, we applied Justice Kennedy's Eighth Amendment analysis in his concurring opinion in *Harmelin v. Michigan* (1991), 501 U.S. 957, 997, 111 S.Ct. 2680, 115 L.Ed.2d 836. We quoted with approval his conclusion that " '[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.' " *Weitbrecht,* 86 Ohio St.3d at 373, 715 N.E.2d 167, quoting *Harmelin,* 501 U.S. at 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (Kennedy, \*\*1077 J., concurring in part and in judgment). We further emphasized that " 'only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality' " may a court compare the punishment under review to punishments imposed in Ohio or in other jurisdictions. *Id.* at 373, 715 N.E.2d 167, fn. 4, quoting *Harmelin,* 501 U.S. at 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (Kennedy, J., concurring in part and in judgment).

With respect to the question of gross disproportionality, we reiterated in *Weitbrecht* that " '[c]ases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person,' " and furthermore that " 'the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.' " Id. at 371, 715 N.E.2d 167, quoting *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 70, 30 O.O.2d 38, 203 N.E.2d 334, and citing *State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46, paragraph three of the syllabus.

5

Gross-Disproportionality Review of Aggregate Prison Terms

Focusing on his aggregate term of incarceration, Hairston claims that the trial court imposed a 134-year sentence that is shocking to a reasonable person and to the community's sense of justice and thus is grossly disproportionate to the totality of his crimes.

In *State v. Saxon,* 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, however, we held that "[a] sentence is the sanction or combination of sanctions imposed for each separate, individual offense." *Id*., paragraph one of the syllabus. We stated, "Ohio's felony-sentencing scheme is clearly designed to focus the judge's attention on one offense at a time," and "[o]nly after the judge has imposed a separate prison term for each offense may the judge then consider in his discretion whether the offender should serve those terms concurrently or consecutively." *Id*. at ¶ 8-9. Because Hairston pleaded guilty to 14 separate felonies and three separate gun specifications, the court imposed 14 separate sentences to be served consecutively, and the cumulative length of his incarceration is therefore attributable to the *number* of offenses he committed.

When considering whether a cumulative prison term imposed for multiple offenses is cruel and unusual punishment, several federal courts of appeals have concluded that the Eighth Amendment proportionality review does not apply to cumulative sentences. For example, in *United States v. Aiello* (C.A.2, 1988), 864 F.2d 257, the court considered an Eighth Amendment challenge to a sentence of life imprisonment without parole, plus consecutive terms totaling 140 years, imposed for 11 felony counts related to a drug-trafficking enterprise. The court rejected the challenge, stating, "Eighth amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence." *Id*. at 265, citing *O'Neil v. Vermont* (1892), 144 U.S. 323, 331, 12 S.Ct. 693, 36 L.Ed. 450. See also *Hawkins v. Hargett* (C.A.10, 1999), 200 F.3d 1279, 1285, fn. 5 ("The Eighth Amendment analysis focuses on the sentence imposed for each specific crime, not on the cumulative sentence for multiple crimes"); *Pearson v. Ramos* (C.A.7, 2001), 237 F.3d 881, 886 ("it is wrong to treat stacked sanctions as a single sanction [because] [t]o do so produces the ridiculous consequence of enabling a prisoner, simply by recidivating, to generate a colorable Eighth Amendment claim"); *United States v. Schell* (C.A.10, 1982), 692 F.2d 672, 675 (rejecting an Eighth Amendment challenge to a sentence imposing two ten-year prison terms, to run consecutively to a prior, 95-year prison term, because it would require the court to find

that "virtually any sentence, however short, becomes cruel and unusual punishment when the defendant was already scheduled to serve lengthy sentences for prior convictions").

Several of our sister states have reached similar conclusions. In *State v. Berger* (2006), 212 Ariz. 473, 134 P.3d 378, for instance, the court rejected an Eighth Amendment challenge to a cumulative prison term of 200 years resulting from ten-year terms imposed consecutively for each of 20 counts of possessing child pornography. The court stated that " '[a] defendant has no constitutional right to concurrent sentences for two separate crimes involving separate acts.' " *Id*. at 479, 134 P.3d 378, quoting *State v. Jonas* (1990), 164 Ariz. 242, 249, 792 P.2d 705. It further reasoned that "if the sentence for a particular offense is not disproportionately long, it does not become so merely because it is consecutive to another sentence for a separate offense or because the consecutive sentences are lengthy in aggregate." *Id*.

In *Close v. People* (Colo.2002), 48 P.3d 528, 540, the Colorado Supreme Court rejected an Eighth Amendment challenge to a cumulative prison term of 60 years imposed on a teenager who had vandalized and stolen speakers from a car, and assaulted and ethnically intimidated several foreign students. The court held that the cumulative 60-year sentence imposed was not subject to proportionality review, noting that "[i]f a proportionality review were to consider the cumulative effect of all the sentences imposed, the result would be the possibility that a defendant could generate an Eighth Amendment disproportionality claim simply because that defendant had engaged in repeated criminal activity." *Id*. at 539. See also *State v. August* (Iowa, 1999), 589 N.W.2d 740, 744 ("there is nothing cruel and unusual about punishing a person committing *two* crimes more severely than a person committing only one crime, which is the effect of consecutive sentencing" [emphasis sic] ); *State v. Buchhold,* 2007 SD 15, 727 N.W.2d 816 (consecutive sentences are not subject to Eighth Amendment analysis).

In accordance with this analysis, we conclude that for purposes of the Eighth Amendment and Section 9, Article I of the Ohio Constitution, proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed consecutively. Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those

7

sentences does not constitute cruel and unusual punishment.

Here, each of Hairston's individual prison terms is within the range authorized by the General Assembly. We have expressly held that trial courts have discretion to impose a prison sentence within the statutory range for the offense. *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus. And, in *McDougle,* we stated that "[a]s a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." 1 Ohio St.2d at 69, 30 O.O.2d 38, 203 N.E.2d 334, citing *Martin v. United States* (C.A.9, 1963), 317 F.2d 753 (overruled on other grounds, *United States v. Bishop* (1973), 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941); *Pependrea v. United States* (C.A.9, 1960), 275 F.2d 325; and *United States v. Rosenberg* (C.A.2, 1952), 195 F.2d 583.

Moreover, Hairston has not challenged any of the statutes upon which his sentences were based; had he done so, however, we have instructed that "reviewing courts should grant substantial deference to the broad authority that legislatures possess in determining the types and limits of punishments for crimes." *Weitbrecht,* 86 Ohio St.3d at 373-374, 715 N.E.2d 167, citing *Solem,* 463 U.S. at 290, 103 S.Ct. 3001, 77 L.Ed.2d 637, and *Harmelin,* 501 U.S. at 999, 111 S.Ct. 2680, 115 L.Ed.2d 836 (Kennedy, J., concurring in part and in judgment). Hairston also asserts that publicity about the length of his incarceration supports his assertion that the sentence is shocking to the community. However, even assuming that to be true, it is not the aggregate term of incarceration but, rather, the individual sentences that are relevant for purposes of Eighth Amendment analysis.

Because the individual sentences imposed by the court are within the range of penalties authorized by the legislature, they are not grossly disproportionate or shocking to a reasonable person or to the community's sense of justice and do not constitute cruel and unusual punishment. Accordingly, Hairston's aggregate prison term of 134 years, which resulted from the consecutive imposition of the individual sentences, does not violate the Eighth Amendment to the United States Constitution or Section 9, Article I of the Ohio Constitution.

## Conclusion

> The United States Supreme Court has emphasized that " 'Eighth Amendment judgments should not be, or appear to be, merely the subjective views of individual Justices; judgment should be informed by objective factors to the maximum possible extent.' " *Rummel v. Estelle* (1980), 445 U.S. 263, 274, 100 S.Ct. 1133, 63 L.Ed.2d 382, quoting *Coker v. Georgia* (1977), 433 U.S. 584, 592, 97 S.Ct. 2861, 53 L.Ed.2d 982 (plurality opinion). And, as Justice Kennedy stated in his opinion in *Harmelin,* "the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is 'properly within the province of legislatures, not courts.' " *Harmelin,* 501 U.S. at 998, 111 S.Ct. 2680, 115 L.Ed.2d 836 (Kennedy, J., concurring in part and in judgment), quoting *Rummel,* 445 U.S. at 275-276, 100 S.Ct. 1133, 63 L.Ed.2d 382; see also *Gore v. United States* (1958), 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405; *Solem,* 463 U.S. at 290, 103 S.Ct. 3001, 77 L.Ed.2d 637; *Weems v. United States* (1910), 217 U.S. 349, 379, 30 S.Ct. 544, 54 L.Ed. 793. Thus we are bound to give substantial deference to the General Assembly, which has established a specific range of punishment for every offense and authorized consecutive sentences for multiple offenses. *Weitbrecht,* 86 Ohio St.3d at 373-374, 715 N.E.2d 167.

> Finally, we note that this case should not be heralded as a signal for future sentencing courts to impose maximum, consecutive terms of incarceration in all cases. Although *Foster* eliminated judicial fact-finding, courts have not been relieved of the obligation to consider the overriding purposes of felony sentencing, the seriousness and recidivism factors, or the other relevant considerations set forth in R.C. 2929.11, 2929.12, and 2929.13. When imposing sentence, courts must be faithful to the law, must not be swayed by public clamor, media attention, fear of criticism, or partisan interest, and must be mindful of the obligation to treat litigants and lawyers with dignity and courtesy.

> Although the trial court here imposed an aggregate prison term that is not likely to be served, the singular conclusion we reach today is that this punishment does not constitute cruel and unusual punishment.

> Judgment affirmed.

*State v. Hairston*, 118 Ohio St.3d. at 292-96. The factual findings of the state appellate court are

9

presumed to be correct.  28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.  28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has explained:

> "[A]n unreasonable application of federal law is different from an incorrect application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan*, 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit

> of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) ( *per curiam* ).

*Renico v. Lett*, – U.S. –, 130 S.Ct. 1855,1862 (2010)(footnote omitted.)

> "[C]learly established" law under § 2254(d)(1) consists of "the holdings, as opposed to the dicta, of this Court's" cases. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" of that law involves not just an erroneous or incorrect decision, but an objectively unreasonable one. *Renico v. Lett,* 559 U.S. ----, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010).

*Wong v. Smith*, – S.Ct. –, 2010 WL 752363, at *2 (Nov. 1, 2010). Further,

> a federal habeas court may not grant habeas relief under 2254(d)(2) merely because it disagrees with a state trial court's factual determination. Rather, the state court's factual determination must be 'objectively unreasonable' in light of the evidence presented during the state proceedings. Furthermore, a state court's factual determinations are presumed correct, and can only be rebutted by clear and convincing evidence. 28 U.S.C.§ 2254(e)(1). Petitioner has failed to meet this standard here.

*Dennis v. Mitchell*, 3564 F.3d 511, 518 (6th Cir. 2003). Clear and convincing evidence is that degree of proof which is more than a mere preponderance of the evidence, but does not rise to the certainty required under beyond a reasonable doubt, and which will produce a "firm believe or conviction as to the facts sought to be established." *Elder v. Berghuis*, 644 F.Supp.2d 888, 893 (W.D. Michigan July 21, 2009), quoting *Chicago Title Ins. Corp. v. Magnuson,* 487 F.3d 985, 991 (6th Cir. 2007).

Petitioner argues that the trial court's imposition of maximum consecutive terms of incarceration, resulting in an aggregate prison term of 134 years, is extreme and grossly disproportionate to the crimes charged. Petitioner essentially argues that, because he did not commit murder or rape, he is not deserving of a sentence that, in essence, constitutes a life term of incarceration without parole. *Traverse*, at 15. Petitioner further argues that the Ohio courts improperly applied or extended cases of the United States Courts of Appeals to uphold his sentence,

rather than looking solely to cases of the United States Supreme Court. On these bases, Petitioner contends that federal habeas corpus relief is warranted. *See id.*

The United States Supreme Court has held, most frequently in opinions dealing with the death penalty, that the Eighth Amendment prohibits punishment that is grossly disproportionate to the crime. *Rummel v. Estelle*, 445 U.S. 263, 271-72 (1980)(citations omitted). "Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id*. at 272. For example, in *Rummel v. Estelle,* 445 U.S. 263 (1980), the Supreme Court rejected the Eighth Amendment challenge to a term of life incarceration imposed on a defendant convicted under a recidivist statute of successive crimes of fraudulent use of a credit card, passing a forged check, and obtaining money by false pretenses. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Supreme Court rejected the Eighth Amendment challenge to a term of life incarceration without parole on a defendant convicted of possessing more than 650 grams of cocaine. Further, "[s]trict proportionality between a crime and its punishment is not required." *Thompson v. Williams*, 685 F.Supp.2d 712, 716 (N.D. Ohio 2010)(citing *United States v. Marks,* 209 F.3d 577, 583 (6th Cir.2000) (citing *Harmelin v. Michigan,* 501 U.S. at 959-60)). A sentence within the statutory maximum for the offense of conviction generally does not violate the Eighth Amendment. *Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000)(citations omitted). Under *State v. Foster*, 109 Ohio St.3d 1 (2006), Ohio courts may, in their discretion, impose consecutive terms of incarceration. Further, the Constitution does not require this Court to compare Petitioner's sentence with that imposed on other defendants for similar crimes in considering whether his sentence violates the Eighth Amendment. *Pulley v. Harris*, 465 U.S. 37, 43-44 (1984). Petitioner does not refer to, and this Court is not aware of, any decision of the United States Supreme Court

suggesting that a sentence of life incarceration for multiple convictions on aggravated robbery, aggravated burglary, kidnapping, and having a weapon while under disability, with firearm specifications, resulting from a spree of armed home robberies by a defendant who had previously been convicted of similar offenses, violates the Eighth Amendment. Accordingly, this Court is not persuaded that his sentence is contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for an evidentiary hearing is **DENIED**.

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel<br>
United States Magistrate Judge